UNITED STATES of America,
Plaintiff-Appellee,

v.

James Harrison HATHAWAY,
Defendant-Appellant.

No. 85–1520.

United States Court of Appeals,
Sixth Circuit.

Argued May 1, 1986.

Decided Aug. 20, 1986.

James E. VanderRoest argued, Vlachos, Jerkins & Hurley, Kalamazoo, Mich., for defendant-appellant.

Charles E. Chamberlain, Jr. argued, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff-appellee.

Before ENGEL, KENNEDY and MILBURN, Circuit Judges.

MILBURN, Circuit Judge.

Defendant appeals his convictions of twenty-eight counts of mail fraud, six counts of wire fraud, and six counts of interstate transportation of securities taken by fraud, in violation of 18 U.S.C. §§ 2, 1341, 1343, and 2314. For the reasons that follow, we affirm.

## I.

On August 7, 1984, a fifty-count indictment was returned against defendant.[1] In the indictment, defendant was charged with thirty-seven counts of mail fraud under 18 U.S.C. § 1341, seven counts of wire fraud under 18 U.S.C. § 1343, and six counts of interstate transportation of securities taken by fraud under 18 U.S.C. § 2314. These charges stem from defendant's involvement in a firm known as First National City Funding, Inc. ("FNCF"). FNCF dealt in what the government characterizes as deferred delivery contracts offering investors an opportunity to speculate in precious metals.

---

1. By way of background, we note that the indictment also named Thomas William Harker, Sr., in seventeen of these fifty counts. In the government's brief it is stated that pursuant to an agreement, Harker pleaded guilty prior to trial to a single-count Superceding Information charging him with violating 7 U.S.C. §§ 2, 6m, and 13(c).

In the indictment, the grand jury alleged that defendant engaged in a scheme to defraud the investing public from whom FNCF had obtained approximately $440,-000.00. The grand jury further charged that defendant failed to protect customer investments as promised, misrepresented FNCF employee qualifications and training, misstated trade prices of metals, assessed unexplained charges to accounts, failed to maintain and furnish accurate account information, engaged in stalling tactics to avoid paying on accounts, represented that FNCF would maintain a segregated bank account into which customer remittances would be placed for protection, made substantial unexplained cash withdrawals from these segregated accounts, used customer funds for personal expenditures, and used the corporate attorney to intimidate customers.

Defendant's trial began on March 5, 1985, and concluded on April 15, 1985. Two days after the conclusion of the trial, the jury returned its verdict finding defendant guilty on forty counts. Defendant was sentenced on June 5, 1985.

### ISSUES ON APPEAL

Defendant's appeal raises seven issues: whether the trial court erred in admitting out-of-court statements of FNCF employees; whether the trial court erred in admitting FNCF business records; whether the trial court erred in admitting evidence as to how defendant used customer funds for personal purposes; whether the trial court erred in instructing the jury that statements made with reckless indifference as to their truth or falsity would satisfy the misrepresentation element of mail and wire fraud; whether the district court erred in instructing the jury that it is not necessary that the alleged scheme actually succeeded in defrauding anyone; whether the trial court properly instructed the jury regarding the fact that a scheme to defraud had

to consist of misrepresentations; whether the trial court constructively amended the indictment by instructing the jury that under 18 U.S.C. § 2314 the government could prove that the securities at issue were either stolen, converted, or taken by fraud when the indictment alleged such characteristics in the conjunctive.

### II.

#### A. *Hearsay*

Although FNCF began as a two-man operation, it eventually employed several "account executives" or sales people. At trial, FNCF customers testified to what they had been told by FNCF "account executives." Defendant objected to this testimony arguing that the statements offered by the witnesses were inadmissible hearsay. The government argued that the statements were not inadmissible hearsay for two reasons. First, the government argued that the statements were not being offered for the truth of the matter asserted and thus were not hearsay as that term is defined in Rule 801(c) of the Federal Rules of Evidence. Second, the government argued that the statements in question fell within the scope of the Rule 801(d) provision of statements which are not hearsay. The district court held that the statements were admissible.

The testimony in question falls into one of two categories: statements offered to prove the falsity of the matter asserted and statements offered neither for the truth nor falsity of the matter asserted.[2]

Prior to the adoption of the Federal Rules of Evidence, the Supreme Court noted:

> Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted. The [out-of-court testimony at issue], however, was not admitted into evidence

---

**2.** When asked during oral argument to specify what evidence was improperly admitted, defendant's counsel pointed to the following: "the statements of customers that they were told there would be no charge or that they were told one particular price for silver when their account executive said he told them another or that they were told ... the company was ... a member of the New York Stock Exchange...."

... to prove the truth of anything asserted therein. Quite the contrary, the point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false. The rationale of the hearsay rule is inapplicable as well. The primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence. Here, since the prosecution was not contending that anything [in the out-of-court statements] was true, the other defendants had no interest in cross-examining them so as to put their credibility in issue.

*Anderson v. United States*, 417 U.S. 211, 219–20, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974) (footnotes omitted). The definition of hearsay as including only those statements offered for the truth of the matter asserted was included in the Federal Rules of Evidence. Fed.R.Evid. 801(c).

■ When statements are offered to prove the falsity of the matter asserted, there is no need to assess the credibility of the declarant. Since there is no need to assess the credibility of the declarant of a false statement, we know of no purpose which would be served by extending the definition of hearsay to cover statements offered for the falsity of the matter asserted. We therefore join those courts which have concluded that statements offered to prove the falsity of the matter asserted are not hearsay. *See United States v. Wellington*, 754 F.2d 1457, 1464 (9th Cir.) (false representation made to an investor not hearsay because probative value was independent of truth), *cert. denied*, — U.S. ——, 106 S.Ct. 592, 593, 88 L.Ed.2d 573 (1985); *United States v. Adkins*, 741 F.2d 744, 746 (5th Cir.1984) (holding that statements introduced to prove falsity of matter asserted not hearsay), *cert. denied*, — U.S. ——, 105 S.Ct. 2113, 85 L.Ed.2d 478 (1985).

■ With regard to the second category of statements—those offered to prove neither the truth nor the falsity of the matter asserted—we hold that the statements were not inadmissible. Just as is the case with statements offered to prove the falsity of the matter asserted, when a statement is offered to prove neither the truth nor falsity, there is no need to assess the credibility of the declarant. The significance lies entirely in the fact that the words were spoken. Thus, the statement does not fall within the Rule 801(c) definition of hearsay nor would the purposes of the hearsay rule be served by treating it as hearsay. *See United States v. Shepherd*, 739 F.2d 510, 514 (10th Cir.1984) (hearsay rule inapplicable to statement which was, by its nature, neither true nor false).

### B. *FNCF Business Records*

Defendant's next argument is that the district court erred in admitting into evidence certain records seized from FNCF offices. The documents in question included transaction statements (the documents FNCF sent to customers confirming orders), trade tickets (FNCF forms reflecting a customer's order), advertising materials, copies of cancelled checks, client files (documents on which FNCF retained data regarding customers), correspondence, and client account agreements.

The government argues that these documents were admissible under two theories. The government argues first that the documents were not offered for the truth of the matters asserted and, thus, were not hearsay under Rule 801(c). Alternatively, the government argues that if the records were hearsay, they were admissible under the business records exception set out in Rule 803(6). The district court admitted the records under Rule 803(6).

#### 1. *Admissibility Under Rule 803(6)*

Defendant's attack on the district court's conclusion is twofold. First, defendant points out that in order to lay the requisite foundation for the evidence to be admissible under Rule 803(6), the government re-

lied in part on the testimony of an FBI agent. Defendant asserts that the use of this testimony was impermissible because the agent was "not ... the proper custodian of the record as contemplated by Rule 803(6)." To support his argument, defendant relies heavily on *Calhoun v. Baylor*, 646 F.2d 1158 (6th Cir.1981), where, in affirming the district court's exclusion of evidence, we stated: "Rule 803(6) is inapplicable because the witness ... played no role in the creation or compilation of the records and was therefore in no position to attest to their reliability." 646 F.2d at 1162. From that, defendant argues that in this circuit only those individuals who play a role in the creation or compilation of records can be used to lay the requisite foundation under Rule 803(6). While this argument is not without some appeal, we are unable to accept it.

To accept defendant's interpretation of the passing statement in *Calhoun* would put this circuit at odds with every other circuit and commentator known by this court to have addressed the issue. Similarly, for us to have held in *Calhoun* that only those who play a role in the creation or compilation of records can testify to lay the foundation would have required us to overrule our earlier holding in *United States v. Reese*, 568 F.2d 1246 (6th Cir.1977). In *Reese*, the authenticating witness did not have control over or a personal knowledge of the evidence contained in the record at issue. Nevertheless, we held that the records in question were admissible since the employee had "knowledge of the [business'] regular practice[s]." 568 F.2d at 1252. *See also United States v. Wables*, 731 F.2d 440, 449 (7th Cir.1984) (citing *Reese* to support the holding that "[t]he witness [used to lay the foundation] need only have knowledge of the procedures under which the records were created.").

■ Thus, contrary to defendant's argument, there is no reason why a proper foundation for application of Rule 803(6) cannot be laid, in part or in whole, by the testimony of a government agent or other person outside the organization whose records are sought to be admitted. When a witness is used to lay the foundation for admitting records under Rule 803(6), all that is required is that the witness be familiar with the record keeping system. *See Wallace Motor Sales, Inc. v. American Motors Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir.1985); *Wables*, 731 F.2d at 449; *NLRB v. First Termite Control Co.*, 646 F.2d 424, 427 (9th Cir.1981); *Elizarraras v. Bank of El Paso*, 631 F.2d 366 (5th Cir. 1980); *Reese*, 568 F.2d at 1252; 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(6)[02], at 803–178 (1985) ("The phrase 'other qualified witness' should be given the broadest interpretation; he need not be an employee of the entity so long as he understands the system.").

In urging that the district court erred, defendant's second argument is that the records should not have been admitted because they were untrustworthy and inaccurate. Rule 803(6) expressly provides that evidence otherwise admissible under Rule 803(6) is to be excluded if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." On the issue of trustworthiness, as with other evidentiary holdings, "the trial court is given great latitude." *Mississippi River Grain Elevator, Inc. v. Bartlett & Co., Grain*, 659 F.2d 1314, 1319 (5th Cir.1981). Thus, on review, we will reverse the district court's decision only if we find a clear abuse of discretion. *See, e.g., State Office Systems, Inc. v. Olivetti Corp.*, 762 F.2d 843, 845 (10th Cir.1985); *Guest v. Bailes*, 448 F.2d 433, 437 (6th Cir.1971).

Deference to the district court's evidentiary ruling is particularly appropriate when, as here, the question of admissibility is close, and the district court has exercised its discretion in favor of admitting the evidence. It is well established that federal law favors the admission of evidence which has *any* probative value at all. *See, e.g., Brooks v. Chrysler Corp.*, 786 F.2d 1191, 1198 (D.C.Cir.1986); *United States v. 1,291.83 Acres of Land*, 411 F.2d 1081, 1086 (6th Cir.1969) (pre Federal Rules of Evidence case). This principle is applicable

in civil and criminal cases, *see, e.g., Young v. Illinois Central Gulf R.R.,* 618 F.2d 332, 337 (5th Cir.1980) (civil); *United States v. Carranco,* 551 F.2d 1197, 1200 (10th Cir. 1977) (criminal); and has been applied by several courts in dealing with Rule 803(6), *see, e.g., Ollag Construction Equipment Corp. v. Goldman,* 665 F.2d 43, 46 (2d Cir.1981); *United States v. Holladay,* 566 F.2d 1018, 1020 (5th Cir.), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978); *United States v. Carranco,* 551 F.2d at 1200.

█ In his argument on this issue, defendant asserts that the district court erred in admitting the record in question because in closing argument the government took the position that defendant's poor record keeping practices were indicative of his intent to defraud customers. The government's argument was based on the absence of records rather than the unreliability of the records which were recovered. The fact that records were missing or unavailable does not evidence a clear abuse of discretion in the district court's finding that the records were trustworthy. Instead, it is an argument which best goes to the weight to be given that evidence. Once a foundation is laid, in the absence of specific and credible evidence of untrustworthiness, the proper approach is to admit the evidence and permit the jury to determine the weight to be given the records. *Accord Wallace Motor Sales, Inc. v. American Motors Sales Corp.,* 780 F.2d at 1061; *United States v. Panza,* 750 F.2d 1141, 1150 (2d Cir.1984); *see also* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(6)[07], at 803–211 ("The jury's function should not be reduced by excluding relevant evidence unless the court is reasonably assured that the result of the litigation will be less reliable if the evidence is revealed to the jury.")

## 2. *Rule 801(c)*

█ Our conclusion that the district court's admission of this evidence is not reversible error is supported by a second, independent reason; that is, we accept the government's argument that the records were not offered for the truth of the matter asserted and thus were not hearsay. Fed.R.Evid. 801(c). In addressing the question of whether the documents at issue were hearsay, we begin by determining what the evidence offered to prove.

In the instant case, the government relied heavily on defendant's mere possession of the records. For example, in closing argument the government reminded the jury of evidence relating to a specific transaction. The government noted that, according to trial testimony, on one occasion a customer was informed that FNCF did not have certain records. However, noting that the records which are now at issue had been seized during the search, the government argued that defendant did indeed have records he had earlier denied that he possessed. During closing argument, the government urged the conclusion that defendant lied to customers when, as a reason for not returning funds, he said that he did not possess the records. If the jury accepted the government's evidence that (1) the records were in defendant's possession, and (2) that, as a reason for not returning the funds, defendant told customers that the records no longer existed at his place of business, it could find that defendant intended to defraud those customers. Since this finding would not be contingent on the truth of the matters asserted in the documents, the documents were not hearsay. *See, e.g., United States v. Anello,* 765 F.2d 253, 261 (1st Cir.) (handwritten messages discovered in wastebasket in business of one conspirator not hearsay when offered to establish conspirators' knowledge of each other), *cert. denied,* —— U.S. ——, 106 S.Ct. 411, 88 L.Ed.2d 361 (1985); *United States v. Arrington,* 618 F.2d 1119, 1126 (5th Cir.1980) (utility bills not hearsay when offered to prove residence of defendant in house searched), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 876, 66 L.Ed.2d 812 (1981); *United States v. Mejias,* 552 F.2d 435, 446 (2d Cir.) (hotel receipt, luggage invoice, and travel agency business card admissible when offered to establish connection between defendant and motel

where drug transactions had occurred), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977).

We therefore affirm the district court's admission of this evidence for two independent reasons. First, we hold that the records were admissible under Rule 803(6). Second, we hold that the evidence was not hearsay as defined by Rule 801(c).

## C. *Expenditures of Corporate Funds for Personal Expenses*

Defendant's next argument relates to the introduction of several FNCF checks. It was the government's theory that defendant used the FNCF checking account to write checks totaling over $17,000 for various personal expenditures. For example, the government introduced three checks payable to VerMeulen Furniture Company totaling $5,230.35. At trial, the credit manager of VerMeulen Furniture testified that defendant's purchase included "two different sets of bedroom furniture, two sleepers, [and] a party set, which is a table and four chairs...." App. at 443.

On appeal defendant concedes that some of the items purchased with these checks were "probably not used in the course of F.N.C.F. business." Defendant-Appellant's Brief on Appeal at 31–32. Nevertheless, defendant argues that the evidence was irrelevant and, alternatively, that the probative value was substantially outweighed by the danger of unfair prejudice.

Relevant evidence is defined in Rule 401 of the Federal Rules of Evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In *United States v. Bibby,* 752 F.2d 1116, 1125 (6th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1183, 89 L.Ed.2d 800 (1986), we set out the elements of 18 U.S.C. § 1341: "In order to establish a violation of the mail fraud statute, 18 U.S.C. § 1341, the government must prove both (1) a scheme to defraud, and (2) a mailing for the purpose of executing the scheme."[3] In *United States v. Van Dyke,* 605 F.2d 220, 225 (6th Cir.1979), we elaborated on the "scheme to defraud" element:

> the scheme to defraud element required under § 1341 is not defined according to a technical standard. The standard is a "reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *United States v. Bruce,* 488 F.2d 1224, 1229 (5th Cir. 1973), *quoting Gregory v. United States,* 253 F.2d 104, 109 (5th Cir.1958). It is not necessary that the scheme be fraudulent on its face but the scheme must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.

■ Clearly, proof that defendant was using FNCF funds for personal expenses, rather than paying client accounts when they became due, is relevant on the "scheme to defraud" element. The purchases tend to show that rather than intending to use customer funds to purchase metals, defendant intended to use them for personal expenditures. Since the checks were relevant, we reject defendant's first argument. *Accord United States v. Knight,* 607 F.2d 1172, 1176 (5th Cir.1979) (in mail fraud prosecution, "evidence of a substantial investment in real estate made by" defendants held "clearly relevant under Rule 401"); *cf. United States v. Pollack,* 417 F.2d 240, 241 (5th Cir.1969) (per curiam) (in mail fraud and fraud in the sale of securities prosecution evidence concerning expenditures at a hotel held relevant to show disposition of funds received in fraudulent undertakings), *cert. denied,* 397 U.S. 917, 90 S.Ct. 924, 25 L.Ed.2d 98 (1970).

Defendant's alternative argument is that under Rule 403 of the Federal Rules of Evidence, the probative value of the evi-

---

**3.** "A violation of the wire fraud statute, 18 U.S.C. § 1343, requires a showing of essentially the same things, the only difference being that a wire communication ... is required instead of a mailing." *United States v. Bibby,* 752 F.2d at 1126.

dence was substantially outweighed by the danger of unfair prejudice. " 'Unfair prejudice' within [the] context [of Rule 403] means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403 advisory committee note.

Defendant has not shown how he was unfairly prejudiced by the admission of this evidence. Accordingly, defendant's assignment of error is rejected.

D. *Jury Instruction on Reckless Indifference*

■ Defendant argues that the following jury instruction given by the trial court as to false and fraudulent statements was improper:

> A statement or representation is false or fraudulent within the meaning of this statute if it relates to a material fact and is known to be untrue *or is made with reckless indifference as to its truth or falsity,* and is made or caused to be made with intent to defraud.

App. at 554–55 (emphasis added). Defendant's attack on this instruction is twofold.

1. *Reckless Indifference to Truth as Proof of Knowledge that Statements were False*

First, defendant argues that a finding of reckless indifference is not enough to establish a fraudulent representation. Although *United States v. Rabinowitz,* 327 F.2d 62 (6th Cir.1964), does not directly address the "reckless indifference" standard, defendant relies heavily on the following language from our opinion in that case:

> In every mail fraud case, there must be a scheme to defraud, representations known by defendants to be false and some person or persons must have been defrauded.... The scheme to defraud must have included the intent to do so. Even if the statements complained of

were false, defendants must have known them to be false and they must have intended to defraud in order to be found guilty.

*Id.* at 76–77 (citation omitted). In *United States v. Stull,* 743 F.2d 439 (6th Cir.1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985), we expressly held that the following jury instruction defining false or fraudulent statements "conformed to the prevailing legal standard":

> A statement or representation is false or fraudulent if the maker of the statement knows it to be untrue; if the person making it does so without regard to whether it is true or false; if it is put forth without a reasonable basis; *or if it is made with reckless indifference as to truth or falsity.*

*Id.* at 445–46 & n. 7 (emphasis included in *Stull* opinion).

While superficially these two opinions may appear inconsistent, they are not. By stating in *Rabinowitz* that "defendants must have known [the statements] to be false," we left open the question of what evidence would be required to prove knowledge of falsity. In *Stull,* we held that proof of reckless indifference was sufficient in 18 U.S.C. § 1341 prosecutions, citing, among other cases, *Irwin v. United States,* 338 F.2d 770, 774 (9th Cir.1964), *cert. denied,* 381 U.S. 911, 85 S.Ct. 1530, 14 L.Ed.2d 433 (1965). 743 F.2d at 446. *Irwin,* in turn, expressed the rationale we implicitly adopted in *Stull:* "One who acts with reckless indifference as to whether a representation is true or false is chargeable as if he had knowledge of its falsity." *Irwin,* 338 F.2d at 774. Thus, while prosecutions under section 1341 require a showing that defendants knew the statements to be false, one who acts with reckless indifference as to the truth or falsity of their statement is chargeable with this knowledge.[4]

> It should be noted, however, that the word "knowledge"—used in criminal statutes with some frequency—has not always been interpreted as having the meaning given in the Model Penal Code. Just as we have seen that

---

4. This is not a novel approach. For example, after discussing the Model Penal Code definition of "knowledge" and "intent," the following observations were made by Professors LaFave and Scott, in their criminal law treatise:

### 2. Constructive Amendment

Defendant's second assignment of error with regard to the above jury instruction is that "by permitting the government to go to the jury on a reckless indifference instruction in the actual trial, the Court allowed an improper constructive amendment of the Indictment." Defendant-Appellant's Brief on Appeal at 15. In making this argument, defendant relies on the fact that reckless indifference was not charged in the indictment. Rather, defendant notes that the indictment charged that he "well knew" that the representations made were false.

In response, the government takes the position that the instruction was neither a constructive amendment nor an impermissible variance. Defendant's assignment of error fails for two reasons.

### a. Absence of Prejudice

The distinction between an amendment and a variance was set out by this court in *United States v. Beeler*, 587 F.2d 340, 342 (6th Cir.1978), *cert. denied*, 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981): "A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment. In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment."

■ Included in this definition are three types of variations between a grand jury indictment and evidence presented at trial. The least common is an actual amendment. This occurs "when the charging terms of the indictment are altered." *United States v. Castro*, 776 F.2d 1118, 1121 (3d Cir. 1985), *cert. denied*, — U.S. —, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986). The second,

but most common, type of variation encompassed by this definition is a variance. A variance occurs when "the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* The third type of variation, a constructive amendment, falls somewhere in the borderland between an actual amendment and a variance. A constructive amendment occurs when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment. *See United States v. Davis*, 679 F.2d 845, 851 (11th Cir.1982), *cert. denied*, 459 U.S. 1207, 103 S.Ct. 1198, 75 L.Ed.2d 441 (1983); *Beeler*, 587 F.2d at 342; *cf. United States v. Ylda*, 653 F.2d 912, 914–15 (5th Cir.1981) (per curiam) (trial court's jury instruction altered elements of offense but evidence was consistent with indictment; held, no possibility that defendant was convicted of crime other than that set out in indictment and instruction was thus harmless).

Although the distinction between a variance and a constructive amendment is at best "shadowy," 3 C. Wright, *Federal Practice and Procedure* § 516, at 26 (2d ed. 1982), it has been considered significant. In dicta we have repeatedly stated that "amendments are deemed prejudicial per se." *United States v. Burkhart*, 682 F.2d 589, 591 (6th Cir.), *cert. denied*, 459 U.S. 915, 103 S.Ct. 228, 74 L.Ed.2d 181 (1982); *see also Beeler*, 587 F.2d at 342 (where although prejudice was clearly present, we noted the per se rule).[5] Variances, on the

---

the word "intent" has not been limited to its dictionary definition, it is also true that the word "knowledge" has likewise sometimes been given a broader definition. Cases have held that one has knowledge of a given fact when he has the means for obtaining such knowledge, when he has notice of facts which would put one on inquiry as to the existence of that fact, when he has information sufficient to generate a reasonable belief as to that fact, or when the circumstances are such that a reasonable man would believe that such a fact existed.

W. LaFave & A. Scott, *Handbook on Criminal Law* § 28, at 198 (1972) (footnotes omitted).

5. The prejudice per se rule has been persuasively criticized as being "flatly at odds" with Supreme Court authority, *United States v. Cina*, 699 F.2d 853, 858 (7th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983),

other hand, will not result in reversal unless "substantial rights" of a defendant have been affected. Fed.R.Crim.P. 52; *United States v. Bowers,* 739 F.2d 1050, 1053 (6th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 195, 83 L.Ed.2d 128 (1984); *Beeler,* 587 F.2d at 342. Substantial rights, in turn, are affected only when a defendant shows "prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 1816 n. 5, 85 L.Ed.2d 99 (1985).

■ We have held that a variance crosses the constructive amendment line only when the variance "create[s] 'a substantial likelihood' that a defendant may have been 'convicted of an offense other than that charged by the grand jury.'" *Beeler,* 587 F.2d at 342; *see also United States v. Gray,* 790 F.2d 1290, 1297 (6th Cir.1986) (per curiam). No such danger is present in the instant case, and, thus, the problem, if any, is one of a variance.

Since we are dealing with a variance, and not an amendment, the only remaining question is whether prejudice is present. "[B]ecause variances between indictments and proof at trial are not regarded as per se error, the burden of proof as to error has been placed on *defendants,* who must not only show the variance exists but also that the variance is 'fatal.'" *Cola v. Reardon,* 787 F.2d 681, 700 (1st Cir.1986) (emphasis in original). In the instant case, defendant has not shown any prejudice, and, accordingly, this assignment of error is rejected.

### b. *Surplusage*

■ The facts before the court in the instant case do not present reversible error for a second reason. The rule prohibiting judicial amendment of indictments is inapplicable to matters of form or surplusage. *See, e.g., United States v. Nabors,* 762 F.2d 642, 647 (8th Cir.1985); *United States v. Cusmano,* 659 F.2d 714, 717 (6th Cir.1981), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984); *cf. United States v. Miller,* 471 U.S. ——, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985) (in context of variance Court noted, "A part of the indictment unnecessary to and independent from the allegations of the offense proved may normally be treated as 'a useless averment' that 'may be ignored.'") (quoting *Ford v. United States,* 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793 (1927)).

Presented with the same facts now before this court, the Ninth Circuit has held the "well knowing" language to be surplusage. *United States v. Love,* 535 F.2d 1152, 1158 (9th Cir.), *cert. denied,* 429 U.S. 847, 97 S.Ct. 131, 50 L.Ed.2d 119 (1976). The rationale of the *Love* court, which we find persuasive and now adopt, was as follows. The court began by recognizing that, "'[o]ne who acts with reckless indifference as to whether a representation is true or false is chargeable as if he had knowledge of its falsity.'" 535 F.2d at 1158 (quoting *Irwin v. United States,* 338 F.2d 770, 774 (9th Cir.1964), *cert. denied,* 381 U.S. 911, 919, 85 S.Ct. 1548, 14 L.Ed.2d 433, 11 L.Ed.2d 438 (1965)).[6] With that background, the *Love* court went on to hold that by giving the reckless indifference instruction, although the indictment charged that the defendant "well knew" that repre-

and the rule has been rejected by other courts. *See, e.g., United States v. Cook,* 745 F.2d 1311, 1316 (10th Cir.1984) ("Prejudice to the defendant must be found before an amendment will be held impermissible."), *cert. denied,* —— U.S. ——, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985); *United States v. Burnett,* 582 F.2d 436, 438 (8th Cir. 1976) (same); *cf. United States v. Lane,* —— U.S. ——, 106 S.Ct. 725, 730, 88 L.Ed.2d 814 (1986) (harmless error rule applies to "most constitutional violations"); *United States v. Mechanik,* —— U.S. ——, 106 S.Ct. 938, 942 n. 1, 89 L.Ed.2d 50 (1986) (suggesting that rules resulting in au-

tomatic reversal should be limited to those situations where the violation in question is considered "pernicious, and other remedies [are] impractical.").

**6.** As we note at 912–13, *infra,* this court implicitly recognized this principle in *United States v. Stull,* 743 F.2d at 445–46, by citing *Irwin* and holding that a "reckless indifference" instruction on false statements "conform[ed] to the prevailing legal standard."

sentations made were false, the district court did not commit reversible error:

> The indictment would have been sufficient without the allegation that [the defendant] well knew the statements he made were misrepresentations. The challenged language does no more than reiterate the knowing state of mind implicit in other language of the indictment. It is thus surplusage.

535 F.2d at 1158.

### E. *Proof that Investors were Actually Defrauded*

■ Defendant next argues that the district court erred in giving the following jury instruction: "It is not necessary that the government prove ... that the alleged scheme actually succeeded in defrauding anyone." App. at 556. To support his argument that this instruction was error, defendant relies on dicta from *United States v. Rabinowitz*, 327 F.2d 62, 76–77 (6th Cir.1964). However, in *United States v. Goodpaster*, 769 F.2d 374, 378–79 (6th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 391, 88 L.Ed.2d 343 (1985), we affirmed a defendant's conviction relying on the "well established" rule that "a conviction under § 1341 does not require proof that the intended victim was actually defrauded." Consistent with *Goodpaster*, we reject defendant's argument.

### F. *Jury Instruction on Misrepresentation*

■ Defendant's next argument is based on the following jury instruction:

> In order to establish that a defendant is guilty of mail fraud, the government must prove beyond a reasonable doubt that:
>
> One, first, the defendant made up a plan or scheme to defraud for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations, and promises;
>
> Two, the defendant knew that the promises or statements were false with respect to material facts;

Three, third, the defendant used or caused to be used the mail to carry out the plan or scheme;

Fourth, the defendant acted with the specific intent to defraud.

App. at 551. Defendant argues that this instruction failed to inform the jury that the fraudulent representations must have been made as part of the scheme to defraud. In *Nolan v. Green*, 383 F.2d 814, 816 (6th Cir.1967), we wrote:

> In considering the correctness and adequacy of a charge to the jury, it should be taken as a whole and read in its entirety; that is, each instruction must be considered in connection with the others of the series referring to the same subject and connected therewith, and if, when taken together, they properly express the law as applicable to the particular case, there is no just ground for complaint, even though an isolated detached clause is in itself inaccurate, ambiguous, incomplete, or otherwise subject to criticism.

*See also Wood v. Marshall*, 790 F.2d 548 (6th Cir.1986).

Reading these instructions as a whole, we find defendant's criticism to be without merit. In one sentence the instruction states that the jury must find a scheme to defraud "by means of false and fraudulent pretenses, representations, and promises." In the very next sentence, the court instructed the jury that it must find that "*the* promises or statements were false." Accordingly, we hold that although the instruction in question may not have been as precise as it could have been, it did adequately apprise the jury of the applicable law.

### G. *Jury Instructions on Violations of 18 U.S.C. § 2314*

■ Defendant's final claim of error is that the trial court improperly instructed the jury regarding Counts Two, Six, Fourteen, Sixteen, Forty, and Forty-six. In those counts the grand jury charged that defendant violated 18 U.S.C. § 2314 by having received checks through the mail,

knowing these to have been "stolen, converted, *and* taken by fraud." Defendant points out that the trial court instructed the jury that they could convict defendant for violating 18 U.S.C. § 2314 if they found that the checks in question had been transported across state lines by defendant, knowing the same to have been "stolen, converted, *or* taken by fraud." Again, defendant asserts that the charge complained of constituted a constructive amendment of the indictment. In *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985), the Supreme Court noted that "a number of longstanding doctrines of criminal procedure are premised on the notion that each offense whose elements are fully set out in an indictment can independently sustain a conviction." Among the doctrines cited to support this proposition was that an "indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if any of the alleged means are proved." *Id.* (citing *Crain v. United States,* 162 U.S. 625, 634–36, 16 S.Ct. 952, 954–56, 40 L.Ed. 1097 (1896)). Thus, we hold that an impermissible variance does not occur when, although an indictment charges several acts in the conjunctive, the district court charges the jury in the disjunctive. *See, e.g., United States v. Johnson,* 767 F.2d 673, 674 (10th Cir.1985).

### III.

Accordingly, the judgment of the district court is AFFIRMED in all respects.