887 F.2d 1088
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Leon Winford LOWE, Defendant-Appellee.
 No. 88-6149.
 United States Court of Appeals, Sixth Circuit.
 Oct. 12, 1989.
 
 1
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and SAM H. BELL, District Judge*.
 
 
 2
 Defendant, Leon Winford Lowe, appeals his jury conviction for bank robbery. For the following reasons, we affirm.
 
 I.
 
 3
 Two branches of the Cumberland Federal Savings Bank (Cumberland) in Louisville, Kentucky were robbed on three occasions during August 1987. Witnesses in the banks gave a physical description of the robber and each noted that he wore short pants underneath long pants, running shoes, a cap and a stocking on his head. During the second robbery, the robber put all of the money, including a security packet which contained a dye bomb, in the front of his pants. When he left the bank, the dye bomb "exploded" and he discarded the packet.
 
 
 4
 As a result of these three robberies, Cumberland circulated a description of the robber to all of its branches. On August 28, 1987, the manager of a branch of the Cumberland bank saw a man that matched the physical description looking into one of the windows of the bank. Based on the man's physical characteristics and the fact that he was wearing a stocking cap on his head, the manager called the police. When the police confronted Lowe, he was wearing two shirts, long pants over shorts, running shoes and a cap and stocking on his head. They asked Lowe if they could examine his abdomen for burn marks. Although Lowe claims that he never consented to this "search," the officers looked at the area around his abdomen and discovered burn marks which were in the process of healing.
 
 
 5
 On September 1, 1987, after being arrested, Lowe signed a typewritten confession which had been prepared by the police. Lowe claims that the police offered him federal prosecution and promised to sentence him to a co-ed prison if he cooperated with them. Lowe also states that the police threatned to arrest his sister, his brother and his girlfriend if he refused to confess to the robberies. The Government claims, however, that the police promised only that Lowe would be prosecuted in federal court and that the prosecutor would be informed of Lowe's cooperation.
 
 
 6
 Before trial, Lowe requested that the Government provide technical evidence concerning the scientific nature of a dye bomb. Although the Government initially refused Lowe's request, it ultimately supplied this evidence at trial. In addition, an FBI agent testified that the dye bombs contain an artificially created substance known as methyl amino anthraquinone (MAAQ), that leaves a trace in the skin.
 
 
 7
 At trial, the court admitted in evidence information concerning Lowe's 1981 convictions for bank robbery. The Government introduced this evidence through FBI Agent Stephen Shimar, who admitted that he did not personally retrieve Lowe's FBI files, that he was not responsible for maintaining the files, that he was not employed by the FBI in 1981 when the file was opened, and that he did not know whether the copy of Lowe's typewritten, unsigned confession contained in the FBI file was actually Lowe's original confession.
 
 
 8
 After the first day of jury deliberations, the court granted a recess and told the jury to return the next morning. When the jury returned the following morning, the judge had not yet arrived and the federal Marshal escorted the jury to the jury room where they remained until the judge arrived. It is disputed whether the Marshal read any instructions to the jury or whether, in fact, whether the Marshal even talked to any member of the jury. Later that morning, the jury returned the guilty verdicts against Lowe.
 
 II.
 
 9
 On appeal, Lowe presents two challenges to the district court's decision to admit in evidence his prior bank robberies. Lowe claims that the evidence unduly prejudice him and that the Government failed to properly authenticate his alleged admission. A trial court's decision on the admission of evidence is reviewed pursuant to an abuse of discretion standard. Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 157 (6th Cir.1988). "In the context of an evidentiary ruling, abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." Id. (citations omitted).
 
 A.
 
 10
 Fed.R.Evid. 403 provides that relevant evidence may nevertheless "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." In addition, Rule 404(b) provides that while evidence of other crimes "is not admissible to prove the character of a person," evidence of past crimes "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident." Lowe relies heavily on United States v. Myers, 550 F.2d 1036 (5th Cir.1977), cert. denied, 439 U.S. 847 (1978), to support his claim that evidence concerning the 1981 convictions should have been excluded. The Myers court stated that, prior to admitting evidence of prior crimes, the Government is required to clearly and convincingly prove the similarity between the crimes. Id. at 1044. In addition, the court stated that the other crimes must not be too remote in time from the charged offense and the element of the charged offense that the evidence of other crimes is introduced to prove must be a material issue in the case. Id. In United States v. Phillips, 599 F.2d 134 (6th Cir.1979), this court discussed the admissibility of evidence of prior crimes and we noted that "[s]omething more than repeated performance of the same class of crimes is required in evidencing a 'design' or 'plan' which, if proved, may raise the inference that the accused was the perpetrator of the crime in question." Id. at 136. We stressed that "there must either be an agreement to commit a series of crimes, a 'plan,' or there must be a distinctive pattern" involved in the crimes before evidence of prior crimes could be admitted. Id.
 
 
 11
 Turning to the instant action, the Government contends that evidence concerning the 1981 bank robberies was admissible because of the similarities of the robberies in 1981 and 1987: the series of robberies occurred in one week intervals; a similar mask was worn; similar notes were given in both cases; and, the robber immediately changed clothes after each robbery. Lowe argues that this evidence does not indicate that a similar modus operandi was used in both robberies and that, in fact, this evidence would relate to virtually any bank robbery. Although the proof of the 1981 crimes is convincing and the proof is not too remote, we find some merit in Lowe's claim that there is no distinctive pattern involving the 1981 and 1987 robberies. However, we are not reviewing this case de novo and this court has noted "that great deference to the district court's weighing" in Rule 403 cases "is appropriate." United States v. Metzger, 778 F.2d 1195, 1206 (6th Cir.1985), cert. denied, 477 U.S. 906 (1986). Further, we stressed in Metzger that "even if on a de novo review this court were inclined to agree with defendant," we should only reverse when the case presents "a set of facts so egregious that deference to the district court is inappropriate." Id. Because there was other evidence (including Lowe's confession) which linked Lowe to the robberies and because the facts in this case are not "so egregious" that it is clear that the evidence of prior acts substantially outweighed its probative value, we find that the district court did not abuse its discretion in admitting evidence concerning the 1981 bank robberies.
 
 B.
 
 12
 Lowe also claims that because Agent Shimar admitted that he was not personally involved in preparing Lowe's FBI file, the contents of the file were not properly admitted under the hearsay exception for business records provided in Fed.R.Evid. 803(6). In United States v. Hathaway, 798 F.2d 902, 906 (6th Cir.1986), this court stated that "[w]hen a witness is used to lay the foundation for admitting records under Rule 803(6), all that is required is that the witness be familiar with the record keeping system." We further noted that "federal law favors the admission of evidence which has any probative value at all," and stressed that "on review, we will reverse the district court's decision only if we find a clear abuse of discretion." Id. (Emphasis in original). Because Agent Shimar testified that he was familiar with the FBI record keeping system, the district court properly admitted the contents of Lowe's 1981 file in evidence.
 
 III.
 
 13
 Lowe's second claim is that the district court should have excluded his confession from evidence because he confessed based on his fear that the police would prosecute his brother, sister and girlfriend if he did not confess. In United States v. Murphy, 763 F.2d 202 (6th Cir.1985) cert. denied, Stauffer v. United States, 474 U.S. 1063 (1986), this court stated that the test to determine "voluntariness is whether the confession was the product of free and rational choice, with the focus on the state of mind of the accused at the time the confession was made." Id. at 205. "In determining whether an accused's will has been overborne, courts look to the totality of the circumstances surrounding the confession and determine their psychological impact on the accused's ability to resist pressures to confess." Id. We noted, however, that "[i]n determining voluntariness, a reviewing court will not disturb the trial court's findings of the specific external occurrences and events surrounding the confession unless clear error appears on the record." Id. at 206.
 
 
 14
 In deciding Lowe's motion to suppress the confession, the district court found that Lowe's confession was freely given. (Cf. Murphy, supra 763 F.2d at 204, where this court held that the defendant's confession was not the product of free will and rational choice because it was given after a police dog "attacked" him "dragged him out from under" a tree and remained "on top of him.") Assuming, arguendo, that the police did tell Lowe that they would prosecute his sister, brother and girlfriend if he refused to provide a confession, the totality of the circumstances surrounding Lowe's confession indicates that the confession was the product of free will and rational choice. Thus, we conclude that district court did not err in denying Lowe's pre-trial motion to suppress his confession or in admitting the confession in evidence at trial.
 
 IV.
 
 15
 Lowe claims that the court should have dismissed the charges against him because the Government failed to establish venue or set forth the elements of the crime in its opening argument. Because venue was established in the indictment, which was read to the jury, we reject this claim. Lowe also claims that his conviction should be reversed because he was not given an opportunity to request that the jury be sequestered and because the jurors were escorted to the jury room by the Federal Marshal. Because there is no federal constitutional right to sequestration and because "[b]rief encounters between a juror and another person ... do not violate the accused's right to a trial by an impartial jury," we also reject these claims. Powell v. Rose, 581 F.Supp. 60 (M.D.Tenn.1983), aff'd, 727 F.2d 1110 (6th Cir.1984).
 
 
 16
 Finally, we reject Lowe's argument that the court abused its discretion in denying his initial request for scientific data concerning dye bombs. Although Lowe received the scientific evidence at trial, he claims that if he had received this evidence earlier, he could have introduced medical evidence which showed the absence of MAAQ in his skin. Because Lowe was ultimately provided with the data at trial and because Lowe could have hired an expert to analyze the dye bomb before trial, the district court did not abuse its discretion in denying this discovery request.
 
 V.
 
 17
 For the above-stated reasons, we AFFIRM the district court's judgment.
 
 
 
 *
 Honorable Sam H. Bell, United States District Judge for the Northern District of Ohio, sitting by designation