923 F.2d 855
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Larry LOFGREN, Defendant-Appellant.
 No. 90-5956.
 United States Court of Appeals, Sixth Circuit.
 Jan. 18, 1991.
 
 Before BOYCE F. MARTIN, Jr. and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 A jury found defendant-appellant Larry Lofgren guilty of interstate transportation of stolen goods in violation of 18 U.S.C. Sec. 2314. Mr. Lofgren contends on appeal (1) that the evidence produced against him was not sufficient to support a conviction, (2) that there was a prejudicial variance between the allegations of the indictment and the evidence produced at trial, and (3) that the district court erred in ordering the payment of restitution to the owner of the stolen property, the offense of which the defendant was convicted not having caused the owner's loss. The last contention has merit, in our view, but the others do not; we shall therefore affirm the conviction and vacate the challenged portion of the restitution order.
 
 
 2
 * Defendant Lofgren was tried on an indictment that read in part as follows:
 
 
 3
 "In or about April 1987, in the Middle District of Tennessee, LARRY LOFGREN, did transport or cause to be transported in interstate commerce from Tennessee to Florida, goods, wares or merchandise with a value in excess of $5,000.00, that is, avionics equipment; which goods, wares or merchandise, LARRY LOFGREN knew to have been stolen, converted or taken by fraud.
 
 
 4
 In violation of Title 18, United States Code, Section 2314."
 
 
 5
 The government's evidence established that an avionics business owned and operated by Mr. Art Vogt in Cookeville, Tennessee, was burglarized on February 19, 1985. The most valuable items taken were two avionics testing sets.
 
 
 6
 Three years after the burglary, National Avionics, Inc., a Florida company engaged in the business of selling, installing, and servicing avionics equipment, sent two testing sets to the manufacturer, IFR Systems, Inc., to have them repaired. IFR recognized the testing sets as the ones that had been stolen from Mr. Vogt.
 
 
 7
 William Saffoury, one of the owners of National Avionics, testified at trial that his company had purchased two pieces of avionics testing equipment from defendant Lofgren. The equipment proved to be damaged. Approximately a year after acquiring it, Mr. Saffoury sent the equipment back to the manufacturer to be repaired. Mr. Saffoury could not positively identify the equipment received from Lofgren as the same equipment that was sent to the manufacturer for repairs; he testified that "I do have the same equipment myself in the company, so I am assuming they are the ones we sent out." He also testified that he did not send any other such equipment to the manufacturer during that time period.
 
 
 8
 FBI agent James L. Harcum, Jr., testified that he had interviewed defendant Lofgren on two occasions. The first interview occurred on June 10, 1988. At that time Mr. Lofgren denied ever having sold any equipment to National Avionics. Lofgren said, however, that he recalled having been contacted by a man whose name he could not remember about buying some avionics testing equipment. He said he turned the man down.
 
 
 9
 Agent Harcum interviewed defendant Lofgren again on December 29, 1988. This time, according to the agent's testimony, Mr. Lofgren told him that although he had not sold equipment to National Avionics, he remembered receiving a check for about $2,000 or $2,500 from a company in Florida. He did not know why he had received the check, but he remembered returning it. He claimed that the company secretary subsequently issued him another check, which he also returned. He said he then recalled telling the company that the check should go to a man named "Robert," who had offered him some testing equipment. When agent Harcum produced a $2,000 National Avionics check payable to Larry Lofgren and endorsed in that name, Mr. Lofgren acknowledged that the signature looked genuine but denied having endorsed the check or having received the money.
 
 
 10
 Mr. Lofgren took the stand in his own defense and testified that the man who offered him testing equipment was one Robert Delassee. He said that when Delassee offered to sell him the equipment, he checked a trade publication and found no indication that the equipment had been stolen. He further testified that he had accepted the $2,000 check from National Avionics in payment of a debt Delassee owed him.
 
 II
 
 11
 * When a reviewing court is called upon to determine whether evidence produced at trial was sufficient to support a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Although the totality of the evidence must be substantial enough to support a finding of guilt beyond a reasonable doubt, United States v. Green, 548 F.2d 1261, 1266 (6th Cir.1977), "a finding of guilt may be based on circumstantial evidence which does not remove every reasonable hypothesis except that of guilt." United States v. Van Hee, 531 F.2d 352, 358 (6th Cir.1976) (quoting United States v. Dye, 508 F.2d 1226, 1231 (6th Cir.1974), cert. denied, 420 U.S. 974 (1975)).
 
 
 12
 To prove that a defendant violated 18 U.S.C. Sec. 2314, the government must prove that the defendant transported in interstate commerce goods valued at $5,000 or more, knowing the goods to have been stolen. Defendant Lofgren argues (1) that the evidence presented at trial was insufficient to support a finding that the property he sold to National Avionics was the property stolen from Vogt, and (2) that the evidence was insufficient to support a finding that he knew the property was stolen.
 
 
 13
 Mr. Lofgren concedes that when viewed in the light most favorable to the prosecution, the evidence established that he did sell equipment of the kind that had been stolen from Vogt. He contends, however, that the evidence did not establish that it was the same equipment. Lofgren and the government are in agreement that the testimony of William Saffoury, of National Avionics, is important to this issue.
 
 
 14
 Mr. Saffoury did not, at the time of his testimony, have records conclusively showing that the serial numbers of the items purchased from defendant Lofgren were the numbers on the items that subsequently proved to have been stolen. Mr. Saffoury did testify, however, that his company noted the equipment it received from Lofgren would require repairs, and no other equipment of this sort was sent back to the manufacturer for repair during this time. A rational trier of fact could therefore find beyond a reasonable doubt that the equipment sent for repairs was the equipment sold by defendant Lofgren.
 
 
 15
 As to whether the evidence was sufficient to show that defendant Lofgren knew the property was stolen, the government points to Lofgren's inconsistent accounts to the FBI concerning his involvement in the sale and the conflict between his statement that he did not sell any equipment to National Avionics and Mr. Saffoury's testimony that he did. We find the government's argument persuasive, and hold that there was sufficient circumstantial evidence to support the jury's finding of knowledge that the equipment was stolen.
 
 B
 
 16
 Mr. Lofgren contends next that the prosecution's proof at trial differed materially from the allegations in the indictment. The supposed variance arises from the fact that the indictment charged that Mr. Lofgren had illegally transported stolen avionics equipment, while the evidence at trial dealt with stolen avionics testing equipment.
 
 
 17
 In United States v. Hathaway, 798 F.2d 902 (6th Cir.1986), we explained that a variance occurs when the evidence presented at trial establishes facts "materially different" from those alleged in the indictment. We went on to say that variances do not rise to the level of reversible error unless the defendant's substantial rights are affected. Such rights are affected "only when a defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." Id. at 910-11 (quoting United States v. Miller, 471 U.S. 130 (1985)). Defendants bear the burden of proving both that a variance exists and that it has affected their substantial rights. Id. at 911.
 
 
 18
 In the case at bar, we do not believe that Mr. Lofgren has established either that a variance occurred or, if one occurred, that his substantial rights were affected by it. We are not convinced that the category of equipment described in the indictment as "avionics equipment" is not broad enough to include "avionics testing equipment." And even if there were a variance, this case would be controlled by United States v. Robinson, 904 F.2d 365, 368-69 (6th Cir.), cert. denied, 111 S.Ct. 360 (1990). There an indictment charged that the defendant had carried a .357 Smith and Wesson revolver, and the proof at trial established that he carried a shotgun. This court concluded that the variance did not affect the defendant's substantial rights. We see no meaningful distinction between that case and this.
 
 C
 
 19
 It was brought out at the sentencing hearing that restitution might be ordered under either the Federal Probation Act, 18 U.S.C. Sec. 3651 (repealed as to offenses committed after November 1, 1987) or the Victim and Witness Protection Act, 18 U.S.C. Sec. 3579 (now renumbered as Sec. 3663). With respect to Mr. Vogt, the owner of the stolen property, the government argued that restitution should be ordered in the amount of $4,800. Without specifying which statute it was relying on, the court accepted this argument and ordered as a condition of probation that Mr. Lofgren pay restitution to Vogt. The court also ordered that restitution be made to National Avionics, the innocent purchaser, in the amount of the $2,000 National Avionics had paid for property that ultimately had to be returned to its rightful owner.
 
 
 20
 Mr. Lofgren does not contest the court's authority to order him to pay restitution to National Avionics. He contends, however, that he was shown to have been responsible only for the loss to the innocent purchaser, and not for the loss suffered by the original owner. We agree.
 
 
 21
 The pertinent statute is the Victim and Witness Protection Act.[1] This statute provides, in pertinent part, as follows:
 
 
 22
 "Order of restitution
 
 
 23
 (a) The court, when sentencing a defendant convicted of an offense ... may order ... that the defendant make restitution to any victim of such offense." 18 U.S.C. Sec. 3663(a) (Supp.1990).
 
 
 24
 In Hughey v. United States, 110 S.Ct. 1979 (1990), the Supreme Court concluded that "the language and structure of the Act make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." Id. at 1981 (emphasis supplied).
 
 
 25
 The specific conduct in the instant case was the property's transportation in interstate commerce, not its theft. The theft caused the owner a loss, but the transportation was not shown to have caused the owner a loss. This is not a "hot pursuit" case, and for all we know defendant Lofgren was not even aware of the theft at the time it occurred.
 
 
 26
 Accordingly, we AFFIRM the conviction but VACATE the restitution order insofar as it directs that restitution be made to Mr. Vogt.
 
 
 
 [1]
 Where a district court does not specify the statute under which it is making an order of restitution, we assume it was the Victim and Witness Protection Act. United States v. Padgett, 892 F.2d 445, 448 (6th Cir.1989)