54 F.3d 777
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Romele Lavelle GATEWOOD, Defendant-Appellant.
 No. 94-6297.
 United States Court of Appeals, Sixth Circuit.
 May 18, 1995.
 
 Before: MARTIN, RYAN and GIBSON, Circuit Judges.*
 PER CURIAM.
 
 
 1
 Romele Gatewood appeals his jury conviction and sentence for making a false statement to the Navy, a department of the United States, in violation of 18 U.S.C. Sec. 1001. Gatewood challenges his conviction based on the sufficiency of the evidence, the district court's denial of his motion for a new trial, and that part of his sentence ordering him to pay restitution. We AFFIRM the district court's judgment and sentence.
 
 
 2
 In September 1991, the Naval Air Station in Millington, Tennessee, solicited bids from contractors a construction project. G&L Contractors, owned and operated by Gatewood, submitted the lowest bid and was awarded a contract which included certification requirements/penalties for fraudulent statements.
 
 
 3
 Work on the Naval Air Station project began in February 1992. At the request of a "Mr. Gates," Construction Quality Consultants (CQC) conducted numerous tests on the project--specifically, on the concrete involved. Construction Quality Consultants submitted its results but was unable to collect for its work. Despite mailing invoices in March and April 1992, no payment was received until CQC refused to release its final report. In March, Gatewood received the first progress payment from the Naval Air Station, in the amount of $7,467.05. In April, "Levele Gates" of G&L Contractors signed a contract with Driveways, Inc. to complete the asphalt work at Naval Air Station. Driveways, Inc. completed this work by the end of the month and sent an invoice to G&L Contractors as well as monthly bills. However, no payment was ever received.
 
 
 4
 On May 5, 1992, Gatewood submitted another invoice to Naval Air Station which included the work done by Driveways, Inc. Accompanying this invoice was a certification that subcontractors had been paid or would be paid from the next progress payment. The work done by G&L Contractors was accepted by the Naval Air Station the next day. Gatewood received a progress payment of $11,077.95 on May 15. On October 8, the Navy sent a letter to Gatewood requesting an invoice for final payment. To receive final payment, Gatewood had to present the test results from CQC. At this time, a partial payment of $500.00 was made to CQC in return for the final test report. On November 25, Gatewood submitted the final invoice, CQC's report, and a certification that subcontractors had been paid. The Navy then paid Gatewood another $4,683.37 on December 21, for a total payment of $23,228.37. However, Gatewood still did not make any further payments to subcontractors.
 
 
 5
 A federal grand jury in the Western District of Tennessee indicted Gatewood on October 20, 1993, charging him with two counts of making a false statement to a department of the United States in violation of 18 U.S.C. Sec. 1001. After many delays, trial began on June 7, 1994; two days later, the jury returned a verdict acquitting Gatewood as to count one, but finding him guilty on count two. Gatewood acknowledged at trial that he owed money to both CQC and Driveways, Inc., but gave reasons for why he was unable or unwilling to pay. On June 15, Gatewood moved for judgment of acquittal or a new trial, but was denied either. Gatewood was sentenced on September 23 to eight months imprisonment, two years supervised release, and to pay restitution to Driveways, Inc. ($11,338.00) and Construction Quality Consultants ($1,566.93). Gatewood did not object to restitution at the time of sentencing. He timely appealed on September 26.
 
 
 6
 On appeal, Gatewood relies on a hyper-technical reading of the certification he submitted to argue that he did not make a false statement because he had indeed made one (partial) payment to a subcontractor. He further contends that there was a constructive amendment of the indictment, that the court improperly instructed the jury as to "willful blindness," and that ordering restitution was plain error because he was acquitted as to count one. We find Gatewood's arguments unpersuasive.
 
 
 7
 The standard of review on questions of sufficiency of the evidence is narrow. We look only to whether, after reviewing "the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir. 1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 8
 Title 18 U.S.C. Sec. 1001 reads in pertinent part as follows:
 
 
 9
 Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully ... makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 
 
 10
 Count two of the indictment charged that Gatewood
 
 
 11
 knowingly and willfully made a false, fictitious and fraudulent statement and representation of a material fact, in that he certified that he had made payments to subcontractors and suppliers from previous payments received under a contract with the United States Navy when in truth and in fact as he then well knew he had not made payments to the subcontractors and suppliers ....
 
 
 12
 The United States emphasizes and we agree that the indictment refers to payments to subcontractors. The United States presented evidence, and Gatewood admitted, that the subcontractors had not been paid for work done on the project. Gatewood admitted knowing that he owed money to the subcontractors, both Driveways, Inc. and CQC. No payments other than the $500.00 partial payment to CQC were ever made to any other subcontractor. Thus, the evidence was clearly sufficient for a rational trier of fact to find guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 13
 Gatewood waived his right to argue any defects in the indictment by not raising any objections prior to trial. Fed. R. Crim. P. 12(b)(2), (f). As to his motion for a new trial based on constructive amendment of the indictment, the evidence presented at trial was sufficient to support the false statement charged and no additional charges were introduced. There was no constructive amendment of the indictment. United States v. Hathaway, 798 F.2d 902, 910 (6th Cir. 1986). Similarly, Gatewood has waived his right to appeal the award of restitution except for plain error. United States v. Young, 470 U.S. 1 (1985). The award of restitution was based on Gatewood's conviction on count two of the indictment; repayment of the subcontractors relates directly to the charges of non-payment and the amounts owed arose from the certification signed by Gatewood. Finally, as to Gatewood's claim that the court improperly instructed the jury on willful blindness, this instruction was necessitated by Gatewood's defense: that he was simply an unsophisticated businessman who did not understand the certification, and that he intended to pay the subcontractors eventually. Given Gatewood's emphasis on his future intent and lack of sophistication, this instruction fairly and adequately submitted the issues to the jury. United States v. Buckley, 934 F.2d 84, 87 (6th Cir. 1991).
 
 
 14
 For the foregoing reasons, we AFFIRM Gatewood's conviction and the sentence of the district court.
 
 
 
 *
 The Honorable John R. Gibson, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation