**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Melissa A. WILLIAMS, Defendant–Appellant.**

**No. 01–4209.**

United States Court of Appeals, Sixth Circuit.

March 26, 2003.

Before MARTIN, Chief Circuit Judge; ROGERS, Circuit Judge; and EDMUNDS, District Judge.[*]

### OPINION

ROGERS, Circuit Judge.

A jury convicted the defendant, Melissa Ann Williams, of making false statements

---

[*] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District

in her application for employment with the United States Postal Service, in violation of 18 U.S.C. § 1001. Williams argues on appeal that (1) the district court erred in denying her motion for acquittal; (2) the evidence presented at trial was insufficient to sustain her conviction; (3) the district court abused its discretion when it allowed the admission of Government's Exhibit 15 into evidence; and, (4) the district court abused its discretion when it excluded from the evidence Defendant's Exhibit 15. For the reasons set forth below, the judgment of the district court is AFFIRMED.

## I. BACKGROUND

The false statements concerned events starting in 1997, when Williams was employed as payroll clerk at the Heartland of Bellefontaine (Heartland) nursing home. On November 25, 1997, the administrator of Heartland, Paul LeGrande, called Williams into his office to discuss some uncovered irregularities, and in the course of this conversation LeGrande formed the opinion that Williams was being untruthful. LeGrande then informed Williams that he was placing her on immediate suspension pending further investigation. Williams testified that at this point she informed LeGrande that she was quitting and would not be returning to work at Heartland. However, LeGrande testified that Williams never informed him of her intention to quit her employment with Heartland. Nevertheless, Williams was aware that she would be fired when Heartland discovered the details of her misbehavior.

During the investigation, Heartland discovered that Williams was responsible for the theft of approximately $12,000. Therefore, on December 2, 1997, LeGrande sent Williams a letter via certified mail notifying her that her employment with Heartland was terminated. An item of certified mail was signed for by defendant's husband, Paul Williams, on December 13, 1997. LeGrande testified that it was possible that he sent other letters to Williams via certified mail during the month of December. The defendant denied ever receiving a termination letter and testified that she never saw the letter until the first day of the trial. She also stated that she was not on good terms with her husband at that time.

Williams was charged in state court with theft as a result of her actions at Heartland. On June 29, 1998, Williams entered into the Logan County Pre-trial Diversion Program ("Diversion Program"). When Williams entered the Diversion Program, her case was transferred to inactive status. While the case was inactive, the charges were still pending against Williams and had not been dismissed. If Williams completed the Diversion Program successfully the charges would then be dismissed against her with prejudice, but if she failed to complete the program successfully the charges would be reactivated. As a condition to entering the Diversion Program, Williams signed an admission of guilt in which she stated that she was responsible for the theft of approximately $15,000 from Heartland.

On September 20, 1998, while she was still in the Diversion Program, Williams applied for a position with the United States Postal Service. Williams's Application for Employment contained the following three questions:

4. Have you ever been fired from a job for any reason?

5. Have you ever quit a job after being notified that you would be fired?

of Michigan, sitting by designation.

7a. Have you ever been convicted of a crime or are you now under charges for any offense against the Law? You may omit: (1) any charges that were dismissed or resulted in acquittal; (2) any conviction that has been set aside, vacated, annulled, expunged, or sealed; (3) any offense that was finally adjudicated in a juvenile court or juvenile delinquency proceeding; and (4) any charges that resulted only in a conviction of a noncriminal offense. All felony and misdemeanor convictions and all convictions in state and federal courts are criminal convictions and must be disclosed. Disclosure of such convictions are required even if you did not spend any time in jail and/or were not required to pay a fine.

Williams answered each of these questions in the negative. However, Williams was concerned with how to answer question 7a and spoke to her Diversion Program officer. Robert Kellogg, about how she could answer this question. Kellogg informed her that she could truthfully answer in the negative to a question asking whether she had ever been convicted of a crime. However, it is unclear whether Kellogg saw the actual question being asked on the Application, and Kellogg stated that he did not recall the issue of how to answer a question asking if Williams was under charges for any offense. He also stated that he thought he would recall the issue arising because he would not have known how to answer the question and would have had to consult one of the prosecutors. As stated, Williams answered question 7a in the negative.

Williams's Application for Employment, as well as a worksheet contained in her Application packet, asked her to list her previous employment for the last ten years. When filling out both the application and the worksheet, Williams failed to include her employment at Heartland and instead said she was still in the U.S. Army

through November of 1997. In fact, Williams was discharged from the Army in 1996.

On September 21, 1998, Williams was interviewed by Virgil Runyon for a position with the United States Postal Service. During the interview Williams was required to initial next to her answers on questions 4, 5, and 7a of the Application for Employment, and Runyon initialed those answers as well to verify the answers given by Williams. Williams did not ask Runyon for any clarification on these questions, and she put her initials by her answers. Williams was not required to initial any other questions. The purpose of requesting an applicant to place initials by these answers is to emphasize the seriousness of these questions.

Williams began employment with the United States Postal Service at the end of September 1998. If the Postal Service had been aware that Williams had been fired for theft or that she was presently under charges for theft, she would not have been hired because of the Postal Service's strong interest in protecting the sanctity of the mail.

## II. ANALYSIS

A. Williams argues in this appeal that the district court improperly admitted into evidence Government's Exhibit 15, a letter written by Paul LeGrande firing Williams from Heartland. The district court admitted the letter under the business records exception to the Hearsay Rule found in Federal Rule of Evidence 803(6). The standard under which we review the admission of hearsay evidence is currently unclear. As we stated in *United States v. Carmichael,*

[t]he applicable standard of review regarding rulings on hearsay evidence appears to be somewhat unsettled within

the circuit. *Compare Stalbosky v. Belew,* 205 F.3d 890, 894 (6th Cir.2000) (observing that this court has traditionally reviewed de novo district court conclusions about whether proffered evidence is hearsay) *with Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 716–17 (6th Cir.1999) (concluding that the Supreme Court's decision in *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), silently overruled this court's "heretofore well-settled precedent that hearsay evidentiary rulings are reviewed de novo" and requires abuse-of-discretion review).

232 F.3d 510, 521 (6th Cir.2000). However, under either standard, we are still "obligated to ignore harmless error" that does not affect the defendant's "substantial rights." *United States v. Leeds,* 178 F.3d 1297, 1999 WL 220129 (6th Cir. Apr. 5, 1999).

Defendant also argues that the district court abused its discretion when it excluded from the evidence Defendant's Exhibit 15, a letter from the Logan County Prosecutor's Office to the United States Postal Service explaining that Williams was in a Pre-trial Diversion Program but that she had never been convicted of a crime. A trial court's decision whether to admit testimony and other evidence is reviewed under the abuse of discretion standard, and even if the trial court abuses its discretion, a new trial is not required unless "substantial rights" of a party are affected. FED. R.CRIM. P. 52(a); *United States v. Bonds,* 12 F.3d 540, 554 (6th Cir.1993). Determinations of relevance and prejudice are also reviewed under an abuse of discretion standard, and that discretion should be construed broadly. *United States v. Jackson–Randolph,* 282 F.3d 369, 376 (6th Cir. 2002). An abuse of discretion that does not affect substantial rights is harmless

error and is to be disregarded. Fed. R.Crim.P. 52(a).

We need not determine whether the district court erred in its evidentiary determinations. In light of the other evidence presented, any error on the part of the district court was harmless, as it did not affect Williams's substantial rights and did not materially affect the verdict. FED. R.CRIM.P. 52(a); *United States v. Latouf,* 132 F.3d 320, 329 (6th Cir.1997)

B. Williams's challenges to the sufficiency of the evidence to support a conviction and to the denial of her Motion for Acquittal may be treated together, as they are both reviewed under the same standard. *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992). We review *de novo* the sufficiency of the evidence to sustain a conviction. *United States v. Gibson,* 896 F.2d 206, 209 (6th Cir.1990).

Evidence is sufficient to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We

> will reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole, and ... this rule applies whether the evidence is direct or wholly circumstantial. It is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt.

*United States v. Stone,* 748 F.2d 361, 363 (6th Cir.1984).

To establish that Williams made a false statement in violation of 18 U.S.C. § 1001, the government must have proven that: (1) the defendant made a statement; (2) the statement is false or fraudulent; (3)

the statement is material; (4) the defendant made the statement knowingly and willfully; and (5) the statement pertained to an activity within the jurisdiction of a federal agency. *United States v. Logan*, 250 F.3d 350, 361 (6th Cir.2001). Williams does not contest the first and last of these elements, but she does challenge the falsity, materiality, and intent elements.

There is substantial evidence that Williams's answers to Questions 4, 5, and 7a were false. and only one answer had to have been found false in order to convict. With regard to Question 4, Paul LeGrande, the administrator at Heartland, testified that he fired Williams from her employment as a payroll clerk. He stated that he sent Williams a certified letter notifying her of her termination. He also testified that Williams never informed him of her intention to quit her employment with Heartland. "To the extent this evidence may be viewed as inconsistent" with Williams's testimony, "any conflicts in the evidence must be resolved in favor of the [government] on appeal." *United States v. Rodgers*, 109 F.3d 1138, 1142 (6th Cir. 1997). "Determining the credibility of witnesses is a task for the jury[.]" *United States v. Kelly*, 204 F.3d 652, 656 (6th Cir.2000). With regard to Question 5, even if Williams did quit, it was only after she received some notification that she would be fired. LeGrande testified that he placed Williams on suspension pending the investigation of Williams's theft from Heartland. Williams herself testified that she knew she would be fired once the details of her theft were discovered by Heartland. With regard to Question 7a, the local prosecutor testified that Williams was in the Diversion Program as of September 20, 1998, and that charges were still pending against her at that time. There is also substantial evidence that Williams's false statements were material, because there was testimony that Williams would not have been hired had the Postal Service known of her theft or that she was presently under charges. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that Williams's answer to at least one of Questions 4, 5, and 7a was both false and material.

Finally, the government introduced substantial evidence that each of Williams's false statements was "knowingly and willfully" made. A jury is permitted to find the element of knowledge if it believes that the defendant had "deliberately ignored a high probability that the form contained material false information." *United States v. Arnous*, 122 F.3d 321, 323 (6th Cir. 1997). With respect to Questions 4 and 5, Paul LeGrande testified that he sent a letter via certified mail to Williams notifying her that her employment with Heartland had been terminated. There was evidence that this letter was signed for by the defendant's husband. Also, Williams herself testified that she knew she would be fired once the details of her theft were discovered. Additionally, Williams repeatedly failed to list her employment with Heartland on several documents related to her application for employment with the Postal Service.

As to Question 7a, the evidence in favor of the government's assertion that Williams knowingly and willfully made a material false statement is also sufficient. Robert Kellogg, Williams's Diversion Program officer, testified that he did not recall Williams asking him whether she could give a negative answer to a question about whether she was currently under charges for a crime, although he did recall discussing with her how she could answer a question asking if she had ever been convicted. Kellogg also stated that he believed that he would have remembered if she had asked him a question about whether she

was currently under charges, as he would not have known how to answer that question and would have needed to talk to the prosecutor's office. The postal official who interviewed Williams, Virgil Runyon, testified that Williams did not ask him any questions about how to answer Questions 4, 5, and 7a of the application. Likewise, Williams also stated that she did not ask Runyon any questions about how to answer the application. Additionally, Runyon stressed to Williams several times during her interview the importance of being entirely truthful in her Postal Service Application. Finally, Williams had read and signed numerous forms that emphasized the importance of being honest and truthful in her application.

Viewing this evidence in the light most favorable to the prosecution, *Jackson v. Virginia*, 443 U.S. at 319, we conclude that a rational trier of fact could have found that the essential elements of the crime of making false statements were established by the government beyond a reasonable doubt.

## CONCLUSION

The evidence presented at trial was sufficient to support Williams's conviction, and if there were any evidentiary errors they were harmless in light of the other evidence offered at trial. Therefore, the judgment of the district court is AFFIRMED.