NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0371n.06

No. 13-1977

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 16, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANTHONY PEAK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| KUBOTA TRACTOR CORPORATION; | ) | DISTRICT OF MICHIGAN |
| KUBOTA INDUSTRIAL EQUIPMENT, | ) | |
| CORP. | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, KETHLEDGE, and WHITE, Circuit Judges.

**SUHRHEINRICH, Circuit Judge.** Plaintiff-Appellant Anthony Peak ("Plaintiff") was injured after the front-end loader tractor he was using to move boulders malfunctioned, causing the boulders to fall on him, resulting in severe injuries. The jury rendered a verdict for Defendants Kubota Tractor Corporation and Kubota Industrial Equipment Corporation ("Defendants"). We affirm.

## I. Background

### A. Facts

In 2007, Plaintiff bought a Kubota tractor model M5050HD and a loader Model LA1153. At the time of the accident, Plaintiff was moving boulders on his property from the side of a barn to a nearby concrete slab. Plaintiff scooped three boulders from the side of the barn into the

bucket and pulled back on the loader's control lever to raise the bucket. Plaintiff claimed that he released the controller lever, which should have caused it to return to the neutral position and for the boom on the loader to stop moving. He then turned his head and body clockwise to look behind him as he drove the tractor backwards toward the slab. However, the controller lever did not release, the boom continued to rise, and the rocks fell out, landing on Plaintiff. He suffered severe injuries.

About two weeks after the accident, Plaintiff took his tractor and loader to Summit Power Center, an authorized Kubota dealer. Plaintiff claims that he specifically requested the failed part be returned to him and that his request was documented on the repair invoice Summit Power gave him.

Summit Power contacted Defendants to inspect the tractor/loader combination to see if Kubota would authorize repairs under the warranty. Defendants' records indicate that Summit's service technician found "the plungers on the single level control were sticking on the lever itself." The records indicate that the technician lubricated "the plungers and the valve seem[ed] to work fine." Kubota nonetheless authorized the replacement of the entire control lever mechanism and the warranty records identify it as a "Failed Part." Defendants also fixed the damage to the tractor caused by the falling rocks. Defendants did not return the original control level mechanism to Plaintiff. Defendants' representative Todd Bechtel testified that he was aware of the accident and injury and notified corporate legal of the incident with Plaintiff's tractor. Defendants claimed that it retained the original controller for approximately six months per its custom and practice, and then discarded it in the normal course of business. Defendants contend that Plaintiff never sent a litigation hold letter or any other communication to put them

2

on notice of a duty to preserve, and that they did not become aware of Plaintiff's allegations until they were served with Plaintiff's complaint in September of 2009.

Plaintiff testified when he picked up his tractor from repair, he was told that the controller had been lubricated but he was not told that the controller had been removed. The invoice he was given documented replaced parts, but did not identify the controller. Plaintiff had the same sticking problems with the replacement controller (although he thought it was the old controller). The experts examined the replacement controller.

## B. Procedural History

On September 23, 2009, Plaintiff filed an eight-count products liability complaint against Defendants.[1] Defendants filed several motions, including a motion for summary judgment, and a motion in limine to bar any expert testimony offered by Plaintiff. After Plaintiff provided Defendants with an expert report from Gary A. Derian, the court denied Defendants' motion, but allowed Defendants to depose Derian, file a *Daubert* motion, and supplement its motion for summary judgment. After deposing Derian, Defendants filed a motion to exclude his proposed expert testimony and also supplemented its motion for summary judgment.

On February 15, 2013, the district court entered an opinion and order (1) denying Defendants' motion to exclude Derian's proposed expert testimony and (2) granting in part and denying in part Defendants' motion for summary judgment. At the outset, the district court noted that of the eight counts alleged in the complaint, Plaintiff had abandoned his manufacturing defect, breach of express warranty, and misrepresentation claims, and conceded that his negligence claim must be dismissed. This left the design defect claim (Count I), failure

---

[1] Plaintiff originally sued Kubota Manufacturing of America. The parties stipulated to a substitute Kubota Industrial Equipment Corporation for Kubota Manufacturing.

to warn (Counts III and VIII), implied warranty of merchantability (Count V), and gross negligence (Count VI).

Defendants argued that Plaintiff's design defect and breach of implied warranty claims should be dismissed because he lacked admissible expert testimony to support the claim. The district court denied Defendants' motion to exclude Derian's testimony and therefore denied its motion for summary judgment as to the design defect claim and breach of implied warranty of merchantability claims. The court granted summary judgment on Plaintiff's failure to warn and marketing defect claims because Plaintiff failed to establish that Defendants had actual or constructive knowledge of the alleged design defect. Relatedly the court held that because Plaintiff did not establish actual or constructive knowledge, Defendants were entitled to summary judgment on Plaintiff's gross negligence claim.

This left two causes of action for trial—one count of design defect and one count of breach of implied warranty. Defendants filed more motions in limine. At the hearing on Defendants' motions in limine, Plaintiff made an oral motion to exclude as inadmissible hearsay two of Defendants' exhibits listed on the joint final pretrial order: the "Warranty documents relating to subject incident" ("Warranty Claim"), Defendants' Exhibit 108; and "Customer Contact relating to incident" ("Customer Contact"), Defendants' Exhibit 107. The district court denied the motion by written opinion and order.

Defendants filed more motions in limine, moving in pertinent part "To Limit the Opinions of Plaintiff's Expert Offered at Trial to Those Provided in His Expert Report and at His Deposition." Defendants told the court that Plaintiff had recently "floated out" a new theory that the part in question "requires excessive lubrication," and that under Fed. R. Civ. P. 26(a)(2)(A)-

4

(E), any such newly raised theory was precluded. The district court denied it, stating that Plaintiff's expert was "going to get a lot of leeway and it's going to be your job to point out inconsistencies, if they're inconsistent" on cross-examination. However, the court added that "[a]ll I'm ruling is plaintiff's counsel cannot ask about excessive lubrication. That's the extent of my ruling."

A jury trial began on June 24, 2013. Plaintiff's expert, Derian, testified that Defendants' use of a spherical ball in a straight groove joint was defective, and that a ball and socket joint should have been used. Derian also opined, over Defendants' objection, that the method of lubricating the tractor was defective because lubrication should have been done with zerk fittings. Plaintiff testified next. On cross-examination, Plaintiff admitted that although he "went through" the owner's manual, which instructed to "lubricate the joints of the control lever linkage every ten hours" of use, he never lubricated the controller, before or after the accident. At the time of the accident, Plaintiff had 211 hours of use on the tractor, and had additional hours of use on it after the accident (with the new controller).

Plaintiff rested. Defendants moved for a directed verdict, arguing in pertinent part that Plaintiff failed to satisfy the requirements of a design defect claim under Mich. Comp. Laws Ann. § 600.2946(2). The district court denied it.

Defendants began their case in chief with the testimony of Todd Bechtel. Bechtel testified that he had been Defendant's national technical services manager since 2007. Bechtel offered his expert opinion testimony as to tractor and loader operations and maintenance. He also opined as to Defendants' record keeping system, including the Customer Contact Form and Warranty Claim documents. Bechtel testified that "the cause of the sticking" incident "was the

lack of lubrication or lack of proper maintenance." Defendants also presented the testimony of two other experts. Ralph Shirley, a professional engineer with a master's degree in agricultural engineering, opined that Plaintiff's accident occurred "as a result of failure to keep the controller lubricated as was instructed in the Operator's Manual and on the decal on the tractor." Alan Doris, a human factors engineering expert, opined that "the information about the frequency with which the control lever should be lubricated was communicated properly. It was communicated both by a label on a tractor and in the Owner's Manual for the loader." The defense then rested.

The court instructed the jury, including the following spoliation instruction, to which Defendants objected.

The plaintiff in this case has not offered the original controller. As this evidence was under the control of the defendant and could have been produced by defendant, you may infer that the evidence would have been adverse to the defendant if you belief that no reasonable excuse for the defendant's failure to produce the evidence has been shown.

> Plaintiff was under no obligation to request the defendant to retain the original controller; therefore, in determining whether or not the defendant has shown a reasonable excuse for not producing the controller, you may not consider any failure on the part of the plaintiff to request the defendant to retain the controller.

Plaintiffs asked that the jury be given the standard Michigan jury instruction for design defect and breach of implied warranty. The district court refused to give the breach of implied warranty instruction. The court provided the jury with a copy of the instructions.

Defendants renewed their motion for a directed verdict, which the court denied.

During deliberations, the jury submitted the following question:

6

> We are confused on question number one. Do we consider general negligence as in how they handled the evidence or do we specifically and only consider design as described on page 15?

"[Q]uestion number one" referred to the Jury Verdict Form, which stated as follows:

**"QUESTION NO 1:** Were the defendants negligent?" Page 15 of the jury instructions contained the standard jury instruction on the elements of a design defect claim.

Plaintiff argued that the jury should be told that they could "consider the way the defendants handled the evidence in making their determination about negligence." Defendants countered that "the thrust of this case is not how Kubota handled anything . . . [s]poliation is not a cause of action here," and that Plaintiff had "to prove that this thing was defective." Defendants suggested that the court tell the jury "to confine yourself to negligence in 15 to determine whether or not the design was defective." The trial court ruled that he would instruct the jury that:

> In determining whether or not you believe defendants are liable for a defective design of the product, you may consider the instruction on page 15, together with all of the other instructions.

Plaintiff's counsel responded, "That sounds good." Defendants continued to object, but the court gave the instruction as stated.

Shortly thereafter, the jury returned a verdict, answering "No" to the Question NO 1. Plaintiff appeals.

## II. Analysis

### A. Business Records

#### 1. Standard of Review

Although state law governs the substantive issues presented in this diversity action, federal law governs all procedural issues "including evidentiary rulings made pursuant to the Federal Rules of Evidence." *V& M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).

As we explained in *United States v. Williams*, 63 F. App'x 782, 784-85 (6th Cir. 2003) and *United States v. Carmichael*, 232 F.3d 510, 521 (6th Cir. 2000), the standard of review for admission of hearsay evidence is somewhat unclear. *Compare Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000) (observing that this court has traditionally reviewed de novo district court conclusions about whether proffered evidence is hearsay), *and United States v. Laster*, 258 F.3d 525, 529 (6th Cir. 2001) (reviewing the district court's admission of purchase records under Fed. R. Evid. 803(6) de novo), *United States v. Dakota*, 197 F.3d 821, 827 (6th Cir. 1999) (reviewing admission of documents under the business records exception de novo); *with Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716-17 (6th Cir.1999) (holding that *General Electric Co. v. Joiner*, 522 U.S. 136, 118 (1997), silently overruled this court's "heretofore well-settled precedent that hearsay evidentiary rulings are reviewed de novo" and requires abuse-of-discretion review). Yet as we also explained in *United States v. Baker*, "these two standards of review are not in fact inconsistent, because 'it is an abuse of discretion to make errors of law or clear errors of factual determination.'" 458 F.3d 513, 517 (6th Cir. 2006). *See also id.* at 517 n.6 (noting that in *United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005), this court "concluded that *Joiner* did not require any change in our standard of review for evidentiary determinations at trial").

As in *Baker*, "[t]he decision as to the correct standard of review will not affect the outcome of this appeal." *Id*. at 517.

### 2. Merits

Plaintiff argues that the district court abused its discretion in admitting Defendants' business records because they contained hearsay within hearsay and each level was not excluded. Defendant's Exhibit 107, the Customer Contact form, stated that: "Jim Carroll—Talked to Ann again, she had talked to the tech. What they found is the plungers on the single lever control were sticking on the lever itself. The tech lubed the plungers and the valve seems to work fine." Defendant's Exhibit 108, the Warranty Claim, stated in relevant part: "Remedy: repair CLEANED AND LUBRICATED PLUNGERS." Exhibit 108 also stated that the controller was repaired by cleaning and lubricated the plungers for a cost of $17.38.

Specifically, Plaintiff contends that the Customer Contact form documents communications between Defendant and a customer or dealer; it does not document communications between employees of the same business. Ann and the tech worked for Summit Power, not Defendants, and there was no evidence to establish that the tech's initial statements were made in the course of a regular business activity of Defendants. Plaintiff claims that the statements in the Warranty Claim document were "the fruit of the same hearsay."

Federal Rule of Evidence 803(6) excludes from the rule against hearsay, "regardless of whether the declarant is available as a witness":

(6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

This court has held that business records are properly admitted under this exception if they satisfy four requirements:

(1) they must have been made in the course of regularly conducted business activities; (2) they must have been kept in the regular course of business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Cobbins v. Tenn. Dep't. of Transp.*, 566 F.3d 582, 588 (6th Cir. 2009) (citation omitted).

Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record. *See United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998). Rather, the custodian must simply be familiar with the company's recordkeeping practices. *Id.* Similarly, "the other qualified witness" laying the foundation for the introduction of the business record need not have personal knowledge of their preparation, but must be familiar with the record-keeping system. *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 575–76 (6th Cir. 1999).

We have explained that the business records exception "is based on the indicia of reliability that attaches to a record created or maintained by an employer in the ordinary or regular course of their business. An employer's independent motivation for creating and maintaining reliable business records obviates the need for sworn testimony and cross-examination." *Cobbins*, 566 F.3d at 588. Thus, once the foundation is laid, absent specific and

10

credible evidence of untrustworthiness, "the proper approach is to admit the evidence and permit the jury to determine the weight to be given the records." *United States v. Hathaway*, 798 F.2d 902, 907 (6th Cir. 1986).

The district court held that Bechtel was "capable of laying the foundation necessary to satisfy Rule 803(6)'s requirements with respect to the Customer Contact and Warranty Claim forms" because (1) he was "familiar with and understands Kubota's record keeping system for the former form and the system used by Kubota's dealers to create the latter form," and (2) he "regularly relies on the Warranty Claim forms prepared by its dealers to evaluate a reported issue with Kubota equipment or components and warranty coverage and reimbursement."

Indeed business records "are potentially fraught with double hearsay." *United States v. Gwathney*, 465 F.3d 1133, 1141 (10th Cir. 2006). Double hearsay "exists when the record is prepared by an employee with information supplied by another person." *Id.* (internal quotations and citation omitted). But information from an outsider is admissible for its truth under Rule 803(6) if that outsider was under a business duty to report the information. *United States v. Cecil*, 615 F.3d 678, 690 (6th Cir. 2010). In this case, as Bechtel explained, Summit Power had a contractual duty to submit warranty claims to Defendants via the Kubotalink system. (K. App. 19; Ex. 1, Bechtel Aff. ¶7). Summit Power's dealer agreement required Summit Power to "follow Kubota's procedures for handling matters covered under a Kubota limited warranty, including for submitting Warranty Claims." (*Id.*). The technician was an employee of Summit Power who was working with Ann and Carroll to diagnose the problem with the controller, as required under Summit Power's business relationship with Defendants. Therefore, the technician was a participant in the chain producing the record in the course of his regular

11

business activity. Thus, Ann's statements and the technician's statements to Defendants, based on personal knowledge, regarding Plaintiff's warranty claim were admissible under Rule 803(6).

Plaintiff complains that the documents lack trustworthiness because (1) the methodology of the statements therein "could never be tested," (2) no person in the triple-level chain of hearsay testified at trial, (3) Defendants replaced the controller assembly even though lubrication fixed the problem, (4) Defendants did not return the product despite Plaintiffs' request, (5) Defendants hid from him the fact that they replaced the controller, and (6) the employees who inspected the controller were not called to testify even though they were available. Appellant's Br. at 20.

None of these assertions establish "credible evidence of untrustworthiness." *Hathaway*, 798 F.2d at 907. First, Plaintiff's inability to test the methodology of the statements (presumably that lubrication corrected the problem) goes to the weight of the evidence, an issue for the jury. *See id.* Second, Sixth Circuit law clearly holds that to be an "other qualified witness", it is not necessary to have personal knowledge of the documents' preparation. *See Dyno Constr.*, 198 F.3d at 575-76. Third, Defendants' replacement of the original controller goes to the weight of the documents. In fact, Bechtel testified that Defendants replaced the controller as a "goodwill" gesture as is customary for good customers like Plaintiff, who had owned two previous Kubota tractors. Fourth, the record does not support the assertion that Defendants hid the fact that the original controller was replaced. Fifth, Plaintiff could have subpoenaed or deposed the individuals who saw the original controller.[2] Finally, Plaintiff's reference to Defendants' spoliation was not relevant to the admission of the business records; in any event

---

[2] However, the district court noted that Summit Power is no longer in business and the parties represented that they were unable to identify and/or locate the individuals from Summit Power whose statements are contained in the subject exhibits.

given the permissive adverse inference instruction, the jury was free to conclude that the original controller was adverse to Plaintiff, regardless of Defendants' business records.[3]  The district court properly exercised its discretion in favor of admitting probative evidence.  *See Hathaway*, 798 F.2d at 906 ("It is well established that federal law favors the admission of evidence which has *any* probative value at all.").

In short, the district court did not err under either a de novo or abuse of discretion standard in admitting Defendant Exhibits 107 and 108.

## B.  Jury Instructions

In a diversity case, state law determines the substance of the jury instruction, but federal law governs the standard of review and any issues as to the propriety of the instructions.  *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000).

Plaintiff asserts that the jury should have been instructed on both of his causes of action. The district court refused to give a separate jury instruction for breach of implied warranty, concluding that Michigan law holds that design defect and breach of implied warranty merge. Plaintiff claims that because the court gave the jury a spoliation jury instruction, he could have argued that the controller was not fit for its intended purpose due to a condition of manufacture, which was unknown because the evidence had been disposed of.  Plaintiff maintains that because he could have argued this alternative basis for liability, the claims did not necessarily merge.

There is no error here.  Although breach of implied warranty and design defect are distinct theories of recovery, "in an action against the manufacturer of a product based upon an

---

[3] Ironically, Plaintiff had admitted the Summit Power Repair Order, which contains the same type of alleged hearsay statements Plaintiff complained of in Defendants' business records.  Plaintiff did presented no witness to lay a foundation for purposes of admitting the document under Fed. R. Evid. 803(6).  The district court admitted it anyway, over Defendants' objection.

13

alleged defect in its design, breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements." *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 186 (Mich. 1984). Thus, "the only time the distinction between implied warranty and negligence may have any significance in design defect cases, is in determining the liability of a seller who is not also the manufacturer." *Id.* at n.30. *See also Miller v. Ingersoll-Rand Co.*, 148 F.App'x 420, 424-25 (6th Cir. 2005). For this reason, the Michigan Supreme Court's Notes on Use of Michigan Standard Civil Jury Instruction 25.222, "Implied Warranty—Burden of Proof," directs that "[t]his instruction should not be used in an action against a manufacturer for an alleged defect in design of its product," citing *Prentis v. Yale Mfg.Co.*, 365 N.W.2d 176 (Mich. 1985).

Plaintiff acknowledges that a design defect claim and implied warranty claim merge, but "only . . . when the implied warranty claim is based upon a design defect." He asserts that he "could have argued that the implied warranty was breached because the product was unfit due to a condition in its manufacture" since he raised a manufacturing defect claim in his complaint. He further argues that "there was a manufacturing condition that rendered the controller not reasonably fit for its intended purposes, or alternatively, that although the original controller itself may not have been abnormal compared to others manufactured by Defendant, the product was unfit as a result of its design." But because Defendants disposed of the original controller, he was foreclosed from examining it for conditions attributable to its manufacture, and "[i]t was for the jury to decide whether the evidence would have shown a manufacturing condition that rendered the original controller unfit for its intended use . . . pursuant to the spoliation jury instruction."

However, by the time of trial, there was no manufacturing defect claim before the jury. That claim, Count II of his complaint, was dismissed on summary judgment. The district court deemed the claim abandoned because Plaintiff failed to address it in his response to Defendants' motion for summary judgment. Plaintiff did not seek reconsideration of that claim in the district court. Moreover, Plaintiff has not challenged the district court's dismissal of his manufacturing claim on summary judgment in this court. It is not mentioned in his statement of issues or body of his brief. It is therefore forfeited. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 318 (6th Cir. 2005) (citations omitted). Furthermore, Plaintiff's suggestion that the purpose of the spoliation instruction was to allow the jury to consider a manufacturing defect finds no support in the record. The instruction was given along with the instruction for design defect, and thus, related to that instruction. This contention is without merit.

Plaintiff also contends that his case was somehow prejudiced because "on the first day of trial, . . . "through a discussion about jury instructions," he learned that Defendants sought to dismiss the implied warranty count on the basis that it should be subsumed into the design defect count. He further claims that the district court declined to rule on the issue until the proofs were in, "which was enormously prejudicial to [his] ability to submit his case." The record reflects that Defendants expressly recognized that both the design defect and the breach of implied warranty claims survived summary judgment, but argued that under the Michigan Standard Jury Instructions, the notes expressly stated that the breach of implied warranty instruction should not be given in an action against a manufacturer for alleged design defect case. Defendants' counsel stated:

> [W]e're not contesting the fact that both claims are in. What we are saying is under the law, under the Michigan Standard Jury Instructions, right in the instructions, on the notes on "use" it says, for example "implied warranty

15

definition." This is the note, and I'm quoting, quote, "This instruction should not be used in an action against a manufacturer for an alleged design defect in the design of a product."

The district court stated that this was an "instruction issue" and that it would be addressed at a later point. Defendants explained that they were raising the issue at this time because Plaintiff wanted both claims on the verdict form. Plaintiff agreed, indicating that he intended to refer to such in his opening statement. The district court responded that:

> Well, I'm going to suggest you stay away from it so you're not caught one way or the other. And if you're right and they're wrong, they'll get the instructions and they'll get the verdict form and they'll be told in the form how they decide, okay.

Counsel responded: "Fair enough. Thank you, Your Honor."

In short, Plaintiff was not prevented from presenting his theories of this case, especially since, under Michigan law, the elements of both theories "involve identical evidence and require proof of exactly the same elements." *Prentis*, 365 N.W.2d at 186.

## C. Jury Question

Lastly, Plaintiff argues that the district court erred in its response to the jury's question. Plaintiff maintains that "[t]he obvious inference that is to be drawn from the jury's question is that the jury felt Defendant wrongfully handled the evidence but it was unclear on whether they could consider that mishandling of evidence in determining 'was the Defendant negligent.'" And, "[b]ased on the spoliation instruction given, the jury could have drawn the negative inference and found negligence based upon the disposal of evidence." Plaintiff asserts that the district court's response was misleading and did not convey an adequate explanation of the law.

To begin with, Plaintiff agreed with the trial court's instructional response to the jury's question, stating "That sounds good." "An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course."

16

*United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990). Furthermore, Plaintiff's objection here is not a correct statement of law, because spoliation of evidence is not a valid cause of action in Michigan. *Teel v. Meredith*, 774 N.W.2d 527, 529 (Mich. Ct. App. 2009). In addition, the jury could have found that the original controller was "adverse" to Defendants in some respect, but that Plaintiff nonetheless failed to prove the elements of design defect. This claim is without merit.

**D. Summary Judgment and Rule 50(a) Motion**

Defendants offer an alternative basis for affirming the judgment of the district court. *See e.g. EA Mgmt. v. JP Morgan Chase Bank, N.A.*, 655 F.3d 573, 575 (6th Cir. 2011) (stating that "we can affirm on any basis supported by the record"). They assert that the district court erred in denying their motion for summary judgment. Specifically they argue that the district court erred initially in denying their motion in limine because Derian was not qualified to offer an expert opinion, and erred in denying their motion for summary judgment because Derian's testimony was the only evidence to support Plaintiff's claim. Alternatively, they contend that the district court erred in denying Defendants' motion for directed verdict at the close of Plaintiff's case in chief as well as at the close of all proofs because Plaintiff's design defect case was based entirely on Derian's allegedly unqualified opinion.

Because we are affirming the jury verdict in favor of Defendants, we need not address these claims.

### III. Conclusion

AFFIRMED.

17